2197 Henderson v. McClain. We're happy to hear from Mr. Bowman in number 2197. Thank you, your honor. May it please the court. The district court here did three things. One, it granted policeman Austin McClain qualified immunity against Jeremiah Henderson's 1983 malicious prosecution claim on the grounds that there was no constitutional violation. Secondly, it held that Henderson did not plead a 1983 retaliatory prosecution claim. And thirdly, the court granted McClain qualified immunity against Henderson's 1983 excessive force claim on the grounds that there was no constitutional violation. I'd like to begin with Henderson's claim that the district court erroneously held that Henderson did not plead a 1983 retaliatory prosecution claim. That's the I'll then discuss the malicious prosecution claim. And finally, the excessive force claim. The district court erroneously held that count two of Henderson's complaint did not adequately plead a retaliatory prosecution claim. One reason given by the district court was that there were no specific factual allegations relating to a retaliatory prosecution claim. That was simply false. Paragraphs nine and 10 on joint appendix page 12 of the amended complaint clearly state a retaliatory prosecution claim. And paragraph 21 in count two of Henderson's amended complaint specifically alleged that McClain, quote, obtained through false and malicious swearing to the magistrate a warrant of arrest against Henderson so that he could retaliate against Henderson for his complaint against him, end quote. The other reason given by the district court for dismissing the retaliatory prosecution claim was that Henderson did not plead he was retaliated against because he was engaged in protective speech, or the retaliatory animus was the but-for cause for the arrest and prosecution. But that's also false. The portions of the complaint I just quoted constituted an adequate claim that McClain initiated the prosecution because Henderson made a complaint about him to the police department. And that was the only reason why he initiated the prosecution. And by 2018, the right to be free from prosecution and retaliation for protective speech was clearly established in Hartman versus Moore Supreme Court case. So, counsel, if I could, if I could interrupt you on this point, um, you you're looking at the complaint and the and the district court's order and that and that's certainly a fair thing to do. But in the complaint, the original complaint, and what turns out to be the operative complaint, I mean, you have two counts and and retaliatory prosecutions, not one of them. And you later moved to amend to add account to make it clear you were seeking to recover under that as opposed to just alleging some facts. Um, and and then you withdrew, withdrew that and that may be a perfectly legitimate thing to do. Please don't take this question as some sort of accusation that you did something wrong. But but when it's withdrawn, when the complaint that actually frames that as a cause of action is withdrawn in a counsel case like this, I mean, is the district court really wrong to say? I mean, that seems to cut against your argument pretty strongly. I appreciate the question. Two things in response. First of all, count to the way that it's pleaded. The only thing it's missing is a label that says retaliatory prosecution. So in response to the first part of what you said, if I had included the word retaliatory and included those two words with malicious prosecution, apparently it would have been fine. Okay, but but secondly, the point about the amendment, there were some complicating factors here and the district court judge, although this was his first day on the job, but I mean, he is from Roanoke and is familiar with the circumstances here. One of those circumstances was Judge Glenn Conrad, who was assigned the case, was very ill. And so this case sat for a year with my motion to amend pending with no action. And only as the state court statute of limitations for filing this case in state court approached, did I withdraw the motion to amend? Because if I didn't do that and file it in state court, I would have run into the statute of limitations in state court would have said, well, you have this pending in federal court. Okay, so that's the logic behind why I withdrew it. Also, COVID was going on. So in fairness to Judge Conrad, it wasn't just that Judge Conrad was ill, but Judge Carmo was ill and COVID was going on the very first part of COVID, when we're all very afraid of COVID throughout that entire period. So that's why even though this was a counseled case, and I made a, you know, hopefully a professional decision, that was the basis for the decision. And the district judge knew that. So that's, I don't think that's a good enough reason for him to have dismissed it. So, so, and I appreciate that. And it may not be really ultimately what we should be looking at. But do is, am I correct, Dan, if I if I may ask that you pursued a retaliatory prosecution claim in state court? Yes, sir. That is correct. And what happened in state court was that by the time this is that we had a hearing in state court, the district judge in federal court had ruled that McLean had probable cause to initiate the prosecution because he had the arrest warrant from the magistrate. And so applying Nieves versus Bartlett, which is the Supreme Court, the latest Supreme Court case on retaliatory prosecution, the logic of the state court was that since McLean had probable cause to initiate the prosecution, the issue of whether there was retaliatory animus was irrelevant. And so the district court's ruling on probable cause precluded the state court from determining the retaliatory prosecution claim. So that that that so that's what the state court ruled. Now, the state court did defer entering a final judgment dismissing the state court claim until this court rules. So the state court case is kind of a hang fire over this probable cause determination by the district court. I appreciate that. Thank you. Yes, sir. As I was saying, you get to the probable cause determination by the district court, the qualified immunity issue. Yes, ma'am. The issue of probable cause on both malicious prosecution or retaliatory prosecution. The issue there is what the policeman knew on October 19th. Now the district court focused on what he knew on October 15th or what he saw on October 15th when the incident at Walmart occurred. But the policeman didn't arrest him that day. The policeman didn't do anything to initiate a prosecution until four days later. And in that four days, that's when Henderson, my client, went to the police department and filed a citizen's complaint. The police sergeant told McLean to reinvestigate the case and to, in as many words, initiate a prosecution of Henderson. And the policeman did that. So by October 19th, this citizen's complaint had occurred and the policeman had investigated it. And by October 19th, the policeman had talked to Shelton, the alleged victim, twice. And in those two, both instances, Shelton said he did not want to press charges. And he said that Henderson only slightly touched him. And he didn't say anything about feeling fear of bodily harm. And under Virginia law... I'm sorry, Your Honor. Go ahead. So I think you were going to answer my question. Does battery under Virginia law require fear? Yes, ma'am. Battery under Virginia law involves a touching. But the touching has to involve an offer of bodily harm. And that part was completely missing from the probable cause here. Shelton had said he did not fear bodily harm, that Henderson just lightly touched him. And you can look at the video. I see the bodily... I see the fear part in the assault, the crime of assault in Virginia, but not battery. Yes, ma'am. Battery consists of conduct done in a rude, insolent, or angry manner. Maybe you can point me to... Yes, one of this court's cases, Fialbini v. Cote, which is cited in my brief. It's at 594 Fed Appendix 113, pages 121 through 122. Well, I've got my pages messed up, maybe. It's Fed Appendix 113, 121 through 122. And what this court said there is that the assault must actually create a reasonable fear or apprehension of bodily harm in the victim. If the touching occurs, then the touching must be in a rude, insolent, or angry manner. And this court said that in the case of Park v. Shiflett at 250 F. 3rd, 843. Well, do you dispute that appellant did make contact with the person in the Walmart store, physical contact? My client's testimony would be that he doesn't think that he actually touched him. There's a video which the court can look at. You know, even if he touched him, just it was very light. It was very slight. It wasn't legally a battery. And it wasn't legally a battery because it wasn't done in a rude, insolent, or angry manner. And it didn't. He wasn't angry? No, sir. The appellant was not angry, you're saying? No, you're right. Well, Your Honor, I'm not talking. It wasn't done in a rude, insolent, or angry manner. It was a reach out to someone to try to get his attention. Yeah, you know, I think that mischaracterizes because, you know, we have the tape. I think your client was angry, and perhaps justifiably so. I would be angry. But that doesn't square with what you're saying about this argument about what is a battery. Well, right. I don't think that it offered bodily harm. I mean, that's not the way I see it. It doesn't offer bodily harm. I think different people can view it in different ways. Okay, but it wasn't a battery. Now, in terms of the video... Rather than a Fourth Circuit case, which apparently is unpublished, interpreting Virginia law, is a Virginia Court of Appeals case from 2010, which says, it's not necessary that the touching resulted injury to the victim's corporeal person. It is sufficient if it does injury to the victim's mind or feelings. Yes, ma'am, that's correct. And I just tried a case on that where that was an important issue in the case. And in the way that applies to this case, is that McLean had no information from Shelton by October 19. And he had talked to Shelton twice at that point, that he felt that mental apprehension or insult or that mental injury that would meet the part of battery that you're talking about in that 2010 Virginia case. You think that the person to whom the battery was assertedly given, if he says, oh, no, it's no problem, that that eliminates the fact that a battery took place? Is that what you're saying? I think that is what you're saying. Maybe you're right. Yes, ma'am. I mean, I think that that is certainly an important factor. And I think that is what I'm saying. But I'm also saying that there were additional factors here, in that McLean talked to this man twice. He talked to him on the day the incident occurred, and the man said it wasn't a big deal. Okay, then his sergeant told him to go reinvestigate, and in so many words, initiate a prosecution of Henderson for the assault and battery. The policeman went back four days later, and Shelton said the same thing. It just wasn't a big deal. It was a light touch. He said, I think I don't want to waste the first time with this. Well, I thought that the touching was a battery depends on the intent of the actor. And we don't get intent from just what your client would say. We get intent from how this would appear to other people, right? At least it appeared to this person, that it looks like he was angry. Okay, but what was he intending to do? He may have been assuming he was angry. What was he intending to do? Was he intending to grab him and pull him to the ground? Was he intending to hit him? No, of course not. He was reaching out to him to get his attention so that he could continue the conversation they were having, and maybe conversation, you could call it an argument, but to continue that rather than to injure him, because he wanted to have his say. Henderson wanted to have a say, and his say was, you can't stop me for this reason. And you can't throw me out of here for this reason, because he didn't do anything. And so that simply didn't constitute a battery. And McClain knew that by October 19. Four days later, he knew that. I think any fair minded person would understand that if he'd thought there'd been a battery, he would have charged him on October 15th, that by October 19, the only reason why he was prosecuting him was because he had this retaliatory animus. And the probable cause should be mitigated by my time, by my time's up, by his failure to act prior to that. Thank you. Well, I think you have some rebuttal time. Yes, ma'am. Counsel, we're ready for you. Thank you, Your Honor. May it please the court. My name is Tim Spencer, City Attorney's Office for the City of Roanoke, and I am representing Officer Austin McClain in this matter. Your Honor, I'm going to pick up where we've been discussing on this matter. The district court did find that it was not pled. There are only two counts listed in the complaint. There are some facts that somewhat indicate, but we also need to do is we need to look at the timeline. This occurred in October 2018. This court in the case of Peg versus Peg case versus Herman. Where is that? I'm sorry. Just let me get to it real quick. This is Hearnberger. This issue came up, and in that particular case, this court quoted the Supreme Court. It said the Supreme Court has never recognized the First Amendment right to be free from a retaliatory arrest that is supported by probable cause. That was citing to Reichley versus Howard. The no such right has been recognized, so the Reichley principle is fully controlling here. Now, the Nevis case doesn't occur until 2019. So how can it be clearly established that Officer McClain knew or should have known that with even with probable cause, there could be a very narrow but four case exception to a retaliatory prosecution claim. So, Counsel, can that I want to make sure I'm understanding your argument. Are you saying that the probable cause issue that applies to the false arrests and the malicious prosecution counts that are plainly pled that that also applies to the retaliatory prosecution case claim? If if we were to find one was pled? Yes, I do believe so, Your Honor. From a qualified immunity standpoint, was it clearly established such cause action existed? I would suggest that no. If you look Supreme Court rulings in Nevis, they even indicate that. Hey, we've met. We've ignored this issue twice before because two cases were first case was found on different grounds, and the second case was an obscure one where we found municipal retaliation. So they the first time that they looked at whether or not with probable cause, a case could go forward for retaliatory prosecution or arrest was the Nevis case, which occurred, which was decided after this case after October 2018. So that what doesn't that? Aren't there two issues that come from that one prior to Nevis? There's not a clearly established, right? And and to even even after it, probable calls, if it was objectively reasonable to believe it existed, would provide a qualified immunity defense. Is that is that right? I believe it would, Your Honor. Um, the Supreme Court gave a very narrow but for situation. They right. If you remember in Nevis, they gave an example of if someone was an outspoken opponent to the police department who then got arrested for jaywalking when no one gets arrested for jaywalking, that then could constitute a where there was probable cause, but a claim for retaliatory prosecution or arrest might apply. I would argue that we don't have those situations here, Your Honor. So before we before we get there, um, your colleague first argued that the district court was, um, yeah, made a mistake or erred in, um, saying there was not a cause of action pled in the first place. And, um, you know, and there's a, you know, I think a interesting argument that that that, you know, that strikes me is that how does he reach that conclusion about that claim where he didn't reach it for excessive force? You know, part of me is like, Okay, there's two claims pled. It would be reasonable to say I'm sticking with the two claims pled, despite a stray word here or there. But once he kind of goes beyond the two claims pled to, I think I got that backwards to claims pled, um, and recognizes excessive force. What's the basis for not doing it with? Um, yeah, with retaliatory prosecution. I know that's irrelevant to the arguments you just made on the merits, but about whether it's properly pled. Your Honor, I'm about to do two things very dangerous. First of all, get trying to get in the head of the district court judge who made the ruling. But my belief is based on what I've read and what I heard him state is that he just didn't believe that the sufficient facts were pled to put a party on notice to get over the Twombly-Iqbal hurdle, if you will, to satisfy that. That he did not believe that it got to that level where it would put party on notice. And in fact, it was not on notice or else I would have pled more definitively the qualified immunity issue. So I think that's where he came down on that. But the other dangerous thing I'm about to do is I think that given where the court came in Nevis, that there is a lack of guidance of where, um, where there might be a claim of retaliatory prosecution when there's, when we have, as we do here, probable cause. So for all these reasons, I think that really the default situation is is that Officer McLean is entitled to or is protected, I should say, by qualified immunity. Also, I'd like to clean up the record with one other thing. On October 15, one of the reasons why the sergeant directed Officer McLean to go back and re-interview people is he did not speak with Mr. Shelton about the details. If you look at the video, he sent, he sent out Ms. Peterson to ask if they wanted the charges. And the only reason that the sergeant said go back and talk to the people yourself is not to rely on the third party as to whether these individuals wish to press charges. Now the other thing that he learned by the 19th is Mr. Shelton told him that his arm had been grabbed and that he wanted to press charges. So for those reasons, he moved forward. I and allows qualified immunity for the malicious prosecution claim. There the courts have been very clear that when probable cause exists, that you will indeed have a defense to malicious prosecution case. And in this instance, courts have been really, the fact that Officer McLean went to a magistrate and had an independent third party determine whether an arrest warrant would be issued goes towards Officer McLean. It makes it objectively reasonable his actions. So when we look at everything, the district court was 100% correct in finding that Officer McLean was protected by qualified immunity for his That it's all on video. It's all for everyone to see. Is the court, the district court, I believe properly on the claim for excessive force, went through the proper standards in Graham and went through and looked at the three points, the severity of the crime at issue, batter, whether the suspect posed an immediate threat to the safety of officers or others in the area. He had already demonstrated that he is willing to reach out. Tensions were high to believe, as Judge Mott said, looked like he was angry. Therefore, it was justified for Officer McLean to attempt to detain Mr. Henderson by putting him in handcuffs. What happened when he tried to do such? Mr. Henderson resisted. Now again, I go to the Peg case where we can go through several things in applying this reasonableness. And again, officers have to make split second decisions. But one of the things I like to look at the Peg decision, the plaintiff or the appellant in this case has not shown any case that clearly demonstrates that Officer McLean violated a clearly established standard in the amount of force that he used in this instance. However, I found a case that from 2017, Peg versus Herberger case, that 2017, this court found similar situations. Now I'm going to go through how they're the same and how they're different. How they're the same, both officers were attempting to place a criminal suspect in handcuffs. In both instances, law enforcement officers instructed the suspect, put your hands behind your back. In both instances, criminal suspects refused to comply with the law enforcement officer. In both instances, the suspects actively resisted being handcuffed. In both instances, they both defendants asked, Why is this what are you doing? In both instances, the law enforcement officers then grabbed the criminal suspect in an effort to place him in handcuffs and used a police maneuver with Officer McLean. He tweaked the risk in a manner that required or helped encourage Mr. Henderson to comply, put him in a stand position and no further violence. Same thing happened with Trooper N. Bernberg, except he took the individual to ground. So this happened after both officers had witnessed a violation of law in person. So how are they different? And this is very important because this goes again to the Graham factors. So we have what did they observe? What crime did they observe? Trooper Herberger is dealing with an expired license, an inspired inspection sticker. Excuse me. So it's it's down here. Whereas Officer McLean is dealing with a battery. I believe I think it's a more dangerous situation that Officer McLean's dealing with. When you say battery, it does sound more dangerous. But when you look at the actual facts here, it's it doesn't feel more dangerous. So I don't know that that's really helpful to you. Well, again, if we talked about earlier, the definition of battery that's been recognized in Virginia, this establishes a battery. No, I understand the definition of battery and the video certainly indicates that there was a to make this what happened at Walmart into, you know, the crime of the century is hopefully not doing that, Your Honor. But it's a little more severe than an expired inspection sticker. Yeah, no, I just I don't know that. Yes, you're right. But I don't know where all this is going. The only other part is the I'm sorry, Your Honor. All this is about is whether this is excessive force, right? Correct. Your argument that you've just been giving us. Yes. And in in Peg case, Trooper Hurnberger took the suspect to ground, put him in handcuffs. There, this court found qualified immunity for that use of force. Here, I believe that Officer McLean used less force than in the Peg versus Hurnberger case, and that's the other difference. And in doing such, I believe that the district court was appropriate and finding that he's protected by qualified immunity. Or he even went further and said, find that there was no constitutional violation in the use of force. So for those reasons, we believe that the district court was appropriate because there's probable cause because Officer McLean went to a magistrate and obtained a warrant that there is protections of probable cause for malicious prosecution. Also believe when you look at the totality of the circumstances and you evaluate the claim for retaliatory prosecution or because there is the presence of probable cause. And in 2018, the law was that was an absolute defense. This court again in the Peg case found that. And finally, when we look at the use of force and all this is captured on on film. When we look at that, we believe it's objectionably reasonable that the to contain Mr. Henderson. Remember that he did convict he did satisfies all three of the Graham matters and that he was resisting actively resisting that time. I think we understand your argument, and that's that's our case. You are. Thank you. Thank you very much. District court rules. Mr. Bowman, you have a rebuttal? Yes, Your Honor. I think I'd like to begin with just just pointing out that, you know, we can all look at the video. The general district court judge who tried the assault and battery case found that Henderson was not guilty of assault and battery. Just throw that out there. Um, now I'd like to return to where Mr. Probable call standard is different. Yes, ma'am. It is standard at trial, right? An unusual aspect of this. Maybe it's not unusual in this day and age, but an aspect of this case is that probable cause and then later determinations of guilt and innocence kind of merged together that when we can actually see what the man what the making. But to begin where Mr. Spencer began, Mr. Spencer argues that on the timeline that it was not clearly established in 2018 that that a person has a right to not be prosecuted in retaliation. That's not true. The Supreme Court's Hartman v. Moore case in 2006 recognized the right to not be protected speech. Now, there's a there's a line of cases after that, a short line of cases and the evidence is as after that our position is that Judge Kuala Lump is correct that under the law that the Supreme Court's articulated so far that, frankly, probable cause does defeat a retaliatory prosecution, right? But the best whether there's probable cause right, it does. And why the district judge didn't address that? That's a good question. I don't know that either. But this probable cause defense to retaliatory prosecution is qualified by the Supreme Court in the Nieves case. And in the Nieves case, it said that if the person wouldn't have been So our position is that he wasn't going to be prosecuted, but for this retaliation, we can prove that. And so this fits within that qualification to the Nieves case recognized. And then further, even if the court finds that it's constrained by what the Supreme Court said in Hartman and Nieves, okay, that's wrong. That should not be the law. And so I'd like to preserve that because the policeman would simply be able to immunize themselves from retaliatory prosecutions by once somebody has complained about them going to the magistrate saying the person committed a crime, and then once they have the arrest warrant from the magistrate, be immunized from retaliatory prosecution. Okay, that's what Judge Gorsuch said in the Nieves case. And that's perfectly correct. So I want to preserve that argument. So, this argument is all about retaliatory action, right? Yes, ma'am. Yes. I thought in response to Judge Qualbaum's questions early on, you acknowledged that there wasn't, you based on the vibe that I got from Mr. Spencer, that I thought that I ought to improve the pleading of it by putting the word retaliatory in the complaint. But my position is that the original complaint that we filed perfectly adequately pleaded retaliatory prosecution under the Twombly-Iqbal standard. And Mr. Spencer's argument that he didn't have notice of it, that's on summary judgment for the district court by the city, as well as by us. We talked about Hartman. We talked about Reichel, which is the case he cites here today. We talked about Nieves. So they were on notice that there was a retaliatory prosecution claim. When did you amend the complaint? I was never allowed to. We never amended it. You never amended the complaint. That's not pledged. Right. Well, I'm saying that the amended... You say it's incorporated Yes, ma'am. It's subsumed in what we pledged. Right now, Mr. Spencer argues that on October 15th, the day of the incident, that McLean did not talk to Shelton. Okay. That is a profound factual dispute in this case. Shelton said in his deposition that he did talk to McLean. McLean denied it. But that's just a plain factual dispute on summary judgment that has to be resolved in Mr. Henderson's favor. I'll have to rely because I'm running out of time. I think I maybe have run out of time. No, not quite. I'll have to rely on my brief on the excessive force claim and on the malicious prosecution claim to a large extent. But I really want to emphasize what I've really wanted to emphasize here today is that we did adequately plead retaliatory prosecution, and the Mr. Henderson's case, that McLean could just immunize himself from the retaliatory prosecution claim when clearly he did retaliatory prosecute Mr. Henderson because he went to the magistrate after the fact. Thank you very much.
judges: Diana Gribbon Motz, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.